**Robert BELTON, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE (NORTHEAST REGION AGENCY), United States Department of Labor, and United States Equal Opportunity Employment Commission, Defendants.**

**No. 88 Civ. 3723 (KC).**

United States District Court, S.D. New York.

June 27, 1990.

David M. Rosoff, White Plains, N.Y., for plaintiff.

Thomas Schlageter, Wendy Adams, Richard Dunlap, E.E.O.C., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

Plaintiff Robert Belton, originally *pro se*, began this action in April of 1988, alleging that the United States Postal Service ("USPS") discriminated against him because of his race and physical handicap when it terminated him from his employment. By Memorandum Endorsement dated December 15, 1989, this Court denied the USPS's motion to dismiss for lack of subject matter jurisdiction. In addition, we denied the USPS's alternative motion for summary judgment, with leave to renew.[1] The USPS has renewed its motion for summary judgment. At the same time, the USPS again asks us, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, to dismiss for lack of subject matter jurisdiction. For the reasons given below, the motion to dismiss is granted.

## BACKGROUND

Belton is a former postal worker. His claim arises out of a settlement agreement Belton and the USPS entered into in March of 1986, to resolve Belton's claim that, in removing him from his job in June of 1985, the USPS discriminated against him on the basis of his race and physical disability, a skin condition. The settlement provided that Belton would abandon his discrimination claim in exchange for the opportunity to complete letter sorting machine ("LSM") training, in preparation for a new position with the USPS. After completing a week and a half of the training, Belton dropped out of the program, apparently because he was physically unable to complete it.

On February 2, 1987, Belton petitioned the USPS to reopen his discrimination claims, alleging that the USPS had not abided by the settlement. After the USPS denied this request, Belton appealed to the EEOC, which also denied Belton's claim. Belton appealed, and the EEOC issued a final determination against Belton on March 3, 1988, concluding that it was Belton who failed to abide by the settlement when he quit the LSM training. Belton received the EEOC's final decision, along with a right-to-sue letter, on March 8, 1988. The right-to-sue letter indicated that Belton had 30 days to appeal the decision to a federal court.

Belton filed his complaint, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (1982), and the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 *et seq.* (1982 & Supp. IV 1986), in the *Pro Se* Office on April 6, 1988, one day before the 30–day period expired. At the same time, he filed a petition to proceed in forma pauperis, which was granted on May 27, 1988. By July 18, 1988, however, Belton had not yet forwarded to the United States Marshals the necessary paperwork for service of the summons and complaint on the defendants. At a conference before the Court, Belton explained that this was because he was amending his complaint. Belton further indicated that he would forward the papers to the Marshals within the next few days. The United States Attorney and the USPS were served a copy of the amended complaint on August 24, 1988.[2] Because they were never served a copy of the original complaint, the service in August, 1988 was the first formal notice of the complaint that the defendants received.[3]

---

1. In the same order, we dismissed Belton's claims against the Department of Labor and his claims under 42 U.S.C. § 1981. Upon application of the parties, the Equal Employment Opportunity Commission ("EEOC") was dismissed on December 7, 1989.

2. Due to a backlog at the Marshal's Office, the summons and complaint were not served until late August, although Belton had delivered the papers to the Marshal's Office in late July.

3. We note that, because Belton mailed a notice concerning a status conference before this Court to the USPS in June of 1988, the USPS did have informal notice of this action prior to the time it finally received the complaint. The USPS did not appear at the status conference on

Because Belton named the USPS, and not the Postmaster General, as a defendant, the USPS moved, in late 1988,[4] to dismiss the complaint for failure to name the proper party as a defendant. Section 717(c) of Title VII, 42 U.S.C. § 2000e–16(c), provides that a federal employee must file his action within 30 days of receiving his right-to-sue letter from the EEOC and "the head of the department, agency, or unit as appropriate, *shall* be the defendant" (emphasis supplied).[5] Thus, the only proper party defendant in an employment discrimination action involving the USPS is the Postmaster General. *See Stewart v. United States Postal Service,* 649 F.Supp. 1531, 1533 (S.D.N.Y.1986). Belton's right-to-sue letter indicated that, if he filed a civil action, he "must name the appropriate official agency head or department head as the defendant."

Belton sought to amend his complaint a third time, to name the Postmaster General as a party. For an amendment adding a new party to relate back to an original complaint under Rule 15(c) of the Federal Rules of Civil Procedure, the new defendant must have had actual notice of the institution of the original action before the statute of limitations as to that new defendant has expired. Because Belton did not serve the complaint within the statute of limitations, no one received notice within the limitations period, not even the party named in the complaint. It seemed therefore that Belton could not amend his complaint. *See Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986) (for amendment changing the defendant to relate back to the date of the original pleading, the party to be brought in must have received notice of the action within the statute of limitations period); *Hughes v. United States Postal Service,* 700 F.Supp. 779 (S.D.N.Y.1988) (complaint dismissed where plaintiff failed to name Postmaster General and failed to serve the

USPS within 30 days of receiving right-to-sue letter); *Stewart v. United States Postal Service,* 649 F.Supp. at 1534.

Because we recognized, as have other courts, that this result, based on a technical pleading requirement in the statute, was extremely harsh, particularly for a *pro se* litigant, *see Hughes,* 700 F.Supp. at 782 (Mukasey, J.); *Stewart,* 649 F.Supp. at 1534–35 (Sweet, J.), we determined, in our prior ruling, that the 30–day limit should be equitably tolled, and granted Belton leave to file an amended complaint. Other circuits have allowed the limitations period to be tolled during the pendency of an in forma pauperis motion. *See Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988); *Paulk v. Department of the Air Force, Chanute Air Force Base,* 830 F.2d 79, 82–83 (7th Cir.1987). In this case, after being granted in forma pauperis status, Belton received the papers to be forwarded to the Marshals for service in mid-June. At the same time, Belton was attempting to amend his complaint. Although it took Belton a few weeks to fill out the papers and organize them for service, we believed that this short delay was excusable. We also did not believe that the USPS was prejudiced thereby, since they had learned of Belton's lawsuit from his notice of a status conference, mailed on July 1, 1988. Moreover, the Assistant United States Attorney obtained a copy of the summons and complaint from the public records room on July 18, 1988. Accordingly, we found that the statute of limitations should be equitably tolled, and that Belton could therefore amend his complaint to name the Postmaster General as a defendant.

## DISCUSSION

In support of its renewed motion to dismiss for lack of subject matter jurisdiction, the USPS now argues that the 30–day peri-

July 18, 1988, because they had not yet been served.

**4.** Because the proceedings were delayed by Belton's efforts to obtain pro bono counsel, the motion was not fully submitted until the fall of 1989.

**5.** Because the 1978 amendments to the Rehabilitation Act incorporate § 717 of Title VII as the exclusive basis of claims by federal employees, the requirement that an employee name the agency head applies to both Belton's Civil Rights Act claims and his Rehabilitation Act claims.

od provided in 42 U.S.C. § 2000e–16(c) is jurisdictional and therefore cannot be equitably tolled. The USPS did not bring this argument to our attention in its first motion to dismiss; indeed, the USPS was "prepared to concede" that the limitations period should be tolled while a *pro se* litigant's application to proceed in forma pauperis is pending. Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment, dated October 24, 1988, at 11, n.*. Although it now cites cases in support of its position that were decided before it filed its first motion, including a Second Circuit case, the USPS explains that a recent Ninth Circuit case, *Mahoney v. United States Postal Service*, 884 F.2d 1194 (9th Cir.1989), has persuaded it to raise the subject matter jurisdiction argument in all appropriate matters. Memorandum in Support of United States Postal Service's Renewed Motion for Summary Judgment ("Def. Mem.") at 13, n.*. Although we do not find the reasoning of the Ninth Circuit in *Mahoney* persuasive, we believe that Second Circuit precedent requires us to dismiss for lack of subject matter jurisdiction.

The question of the whether the 30–day limitation in Section 2000e–16(c) is a restriction on subject matter jurisdiction, or a statute of limitations subject to equitable tolling, has not yet been decided by the Supreme Court.[6] The circuits that have ruled have split on the issue. *See Mahoney, supra*, 884 F.2d at 1200 (jurisdictional); *Mondy v. Secretary of the Army*, 845 F.2d 1051 (D.C.Cir.1988) (non-jurisdictional); *Bell v. Veterans Admin. Hosp.*, 826 F.2d 357, 360–61 (5th Cir.1987) (jurisdictional); *Hornsby v. United States Postal Service*, 787 F.2d 87, 89 (3d Cir.1986) (non-jurisdictional); *Zografov v. V.A. Medical Center*, 779 F.2d 967 (4th Cir.1985) (non-jurisdictional); *Sims v. Heckler*, 725 F.2d 1143, 1146 (7th Cir.1984) (jurisdictional); *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th

Cir.1984) (non-jurisdictional); *Milam v. United States Postal Service*, 674 F.2d 860, 862 (11th Cir.1982) (non-jurisdictional); *Brown v. General Services Admin.*, 507 F.2d 1300 (2d Cir.1974) (jurisdictional).

As the USPS points out, the circuits that have held that the period is not jurisdictional have relied on a Supreme Court decision, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), which permitted equitable tolling in suits against private employers, brought pursuant to 42 U.S.C. § 2000e–5. In *Zipes*, the Court held that the 90–day (now 180–day) time limit for filing a Title VII claim against a private employer with the EEOC was not jurisdictional and was, "like a statute of limitations, ... subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132. The Court based its decision upon (1) Congress's having expressed the time limit in a provision (42 U.S.C. § 2000e–5(e)) entirely separate from the one that defines the jurisdiction of the courts (§ 2000e–5(f)), 455 U.S. at 394–95, 102 S.Ct. at 1133; (2) legislative history, *id.;* (3) prior cases reflecting an assumption that the filing requirement was not jurisdictional, *id.* at 397–98, 102 S.Ct. at 1134–35; and (4) Title VII's remedial purpose, *id.* at 398, 102 S.Ct. at 1135.

Relying on *Zipes*, the District of Columbia Circuit determined, in one of the cases which persuaded us in our prior decision to permit equitable tolling, that the 30–day period in Section 2000e–16 could be equitably tolled in an action against the government, in particular, the United States Army. *Mondy v. Secretary of the Army*, 845 F.2d at 1057. The court recognized that such an "[e]xtension of equitable tolling to [claims against the government] is not automatic by any means, for the government enjoys sovereign immunity, and waivers of such immunity are narrowly read." *Id.* at 1055 (citing *United States v.*

---

**6.** The Supreme Court denied a writ of certiorari in an appeal from a decision by the Seventh Circuit holding the 30–day limit to be jurisdictional. *Stuckett v. United States Postal Service,* 469 U.S. 898, 105 S.Ct. 274, 83 L.Ed.2d 210 (1984). Recognizing a split among the circuits, Justices White and Rehnquist dissented from the denial of certiorari. *Id.* at 899, 105 S.Ct. at 274. In a recent case in which the issue was again presented, the Court vacated and remanded. *Hernandez v. Secretary of the Army,* —— U.S. ——, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990) (discussed *infra* at footnote 9).

*Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)). The court found no "exceptionally emphatic language" in Section 2000e–16(c) which could be read as a "sign of legislative intent that a time limit should be jurisdictional." *Id.* at 1055–56. In addition, the court found significance in Section 2000e–16(c)'s 30–day time limit's being placed in a provision separate from the section governing jurisdiction, Section 2000e–16(d). *Id.* at 1056. This structure suggested to the court that Congress intended the 30–day time limit to be non-jurisdictional. Accordingly, the court concluded that the 30–day time limit could be equitably tolled. *Id.* at 1057.

Our Circuit, however, has determined that a failure to meet the 30–day filing requirement in Section 2000e–16(c) presents "threshold jurisdictional issues." *Brown v. General Services Admin.,* 507 F.2d 1300, 1308 (2d Cir.1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Although the court conceded that some "decisions of the Supreme Court illustrate a more liberal attitude with regard to waivers of sovereign immunity at least where a federal agency is concerned," *id.* at 1307 (citing *Federal Housing Admin. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940); *Kiefer & Kiefer v. Reconstruction Finance Corp.,* 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939)), the court could not "ignore the explicit condition imposed by Congress on a suit such as the instant one" under 42 U.S.C. § 2000e–16. *Id.* Thus, the court viewed "compliance with the 30 day filing requirement" as a jurisdictional prerequisite—a condition to being able to proceed against the government under the Civil Rights Act. *Id.*[7]

More recent Second Circuit authority also indicates that the court views the 30–day period as jurisdictional. In *Long Island Radio Company v. N.L.R.B.,* 841 F.2d 474 (2d Cir.1988), the court, considering a 30–day filing requirement for applica-

tions for attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504 (1984), observed,

> Since jurisdiction to entertain a claim against the United States exists only as Congress has granted it, neither an agency nor a court has the power to entertain claims that do not meet the conditions limiting the waiver of immunity. Where a statute authorizing a claim against the United States contains time limits for filing the claim, those limits set the temporal boundaries of the consent to be sued; they grant the tribunal in which the claim is to be filed jurisdiction to entertain only those claims that are filed within the time allowed by the statute.... As stated in *Simon v. United States,* 244 F.2d 703, 705 (5th Cir.1957), such a time limit is an "enabling statute, evidencing a consent to be sued and fixing the time for suing[; it] is not a statute of limitation but a statute granting for a limited time the right of action afforded."

*Id.* at 477 (citations omitted). *See also Bornholdt v. Brady,* 869 F.2d 57, 67 (2d Cir.1989) (holding by implication that where a limitations period for suits against the government is mandated by Congress, such a statute is "a limitation that affects the court's jurisdiction" and cannot be equitably tolled). Accordingly, we hold that the 30–day period in Section 2000e–16(c) is a restriction on our subject matter jurisdiction which may not be equitably tolled.

We note that in *Mahoney v. United States Postal Service,* 884 F.2d 1194 (9th Cir.1989), the Ninth Circuit came to the same conclusion, but following different reasoning which, for reasons explained below, we do not find persuasive. The Ninth Circuit analyzed the availability of equitable tolling in light of *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), decided after *Mondy,* in which the Supreme Court addressed the question of whether prejudgment interest may be

---

**7.** In affirming the Second Circuit's opinion, the Supreme Court held, without explicitly addressing whether or not the 30–day limit is jurisdictional, that "since Brown failed to file a timely

complaint under § 717(c), [42 U.S.C. § 2000e–16(c),] the District Court properly dismissed the case." 425 U.S. at 835.

awarded in a suit against the USPS. In *Loeffler,* to determine whether Congress had waived sovereign immunity with respect to awards of prejudgment interest against the USPS, the Court examined the provisions of the Postal Reorganization Act of 1970, in which Congress granted to the USPS the power "to sue and be sued in its official name." 39 U.S.C. § 401(1) (1982). According to the Supreme Court, Congress, by including this clause in the USPS's charter, "cast off the Service's 'cloak of sovereignty' and [gave] it the 'status of a private commercial enterprise.'" *Loeffler,* 108 S.Ct. at 1970 (quoting *Library of Congress v. Shaw,* 478 U.S. 310, 317 n. 5, 106 S.Ct. 2957, 2963 n. 5, 92 L.Ed.2d 250 (1986)). Such a broad waiver of sovereign immunity should not be circumscribed absent exceptional circumstances:

> [I]f the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense.

*Id.* 108 S.Ct. at 1969 (quoting *Federal Housing Admin. v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)).

Applying this test, the Court held that subjecting the USPS to prejudgment interest awards would not be inconsistent with the Postal Reorganization Act, nor would it pose a threat of grave interference with the USPS's operations. *Id.* 108 S.Ct. at 1970. Further, the Court saw nothing in the language of the statute or its legislative history to indicate that Congress intended that Section 401 be applied narrowly with regard to interest awards. *Id.* Thus, the Court concluded that "Congress waived [the USPS's] immunity from interest awards, authorizing recovery of interest from the Postal Service to the extent that interest is recoverable against a private party as a normal incident of suit." *Id.*

Referring to the three factors in *Loeffler* upon which, according to the Court, any exception to the USPS's general waiver of sovereign immunity must be based, the Ninth Circuit in *Mahoney* found "exceptional circumstances" which indicated that Congress had not intended to waive the USPS's immunity with regard to statutory limitations periods. *Mahoney,* 884 F.2d at 1199. Although the court did not believe that "treating the 30–day period as non-jurisdictional can be viewed as inconsistent with the goals of the Postal Reorganization Act," *id.,* or that "allowing equitable tolling of section 2000e–16's filing period would pose a threat of 'grave interference' with the USPS's operations," *id.,* the court concluded that "the language of the Postal Reorganization Act, itself, indicates that Congress intended that the USPS's sue-and-be-sued clause be applied narrowly with regard to statutory limitations periods." *Id.*

Specifically, the court pointed to an exception in 39 U.S.C. § 409(b), which provides:

> Unless otherwise provided in this title, the provisions of title 28 relating to service of process, venue and *limitations of time for bringing action in suits* in which the United States, its officers, or employees are parties ... shall apply in like manner to suits in which the Postal Service, its officers, or employees are parties.

39 U.S.C. § 409(b) (1982) (emphasis added); *see also Loeffler,* 108 S.Ct. at 1970 & n. 4 (noting existence of exception). As the court in *Mahoney* pointed out, Section 409(b) does not specifically mention Title VII. Nevertheless, the court found "that it evinces congressional intent to afford the Postal Service the benefit of being considered an arm of the government where many of the mechanics of filing suit are concerned." *Mahoney,* 884 F.2d at 1199–1200. Because both Section 2000e–16(c) and the provisions of Title 28 discussed in Section 409(b) provide for "limitations of time for bringing action in suits," the court concluded that "the USPS should be treated as a governmental entity rather than a

private business when application of section 2000e–16(c) is at issue." *Id.* at 1200.

In support of this conclusion, the Ninth Circuit also referred to the statutory structure of Title VII. The court noted that, while private-sector suits are governed by the provisions of Section 2000e–5, suits against the government, including the Postal Service, are governed by Section 2000e–16. Once an action is commenced against a governmental entity, on the other hand, suits against private parties and the government are treated alike, pursuant to Section 2000e–16(d). *Id.* To the Ninth Circuit, this was an indication that Congress intended for the Postal Service to be treated like a governmental entity, at least with respect to commencement of actions. *Id.* Accordingly, the Ninth Circuit held that the plaintiff, in her suit against the Postal Service, could not take advantage of Rule 15(c), and amend her complaint to name the Postmaster General as a defendant. *Id.*

Although we agree that "the USPS should be treated as a governmental entity rather than a private business when application of section 2000e–16(c) is at issue," this conclusion, in our view, does not go far enough. It begs the question, whether the 30–day period, which applies to all federal employment, is to be treated as a jurisdictional prerequisite, rather than as a statute of limitations. Stated another way, because Section 2000e–16 covers only governmental entities, including the USPS, to say that the USPS is to be treated like a governmental entity when application of that section is at issue simply restates the obvious. It does not tell us whether 2000e–16

is to be narrowly applied, as a limit on jurisdiction, or broadly, as a statute of limitations. Section 2000e–16's reference to the USPS does not add to the analysis; it merely reinforces Section 409(b)'s requirement that the USPS be treated like a governmental entity with respect to "limitations of time for bringing action in suits" like the 30–day requirement. To find otherwise, based on Section 409(b) of the Postal Reorganization Act, would allow Section 2000e–16's 30–day period to be interpreted narrowly, as jurisdictional, when applied to the USPS, and broadly, as non-jurisdictional, for other governmental agencies that are not covered by provisions like Section 409(b). We do not believe that Congress intended such a possibility.

Although we do not rely on the reasoning in *Mahoney*, we are nevertheless bound by precedent in our own Circuit to find that Belton's complaint must be dismissed for lack of subject matter jurisdiction. According to this precedent, the explicit language of Section 2000e–16(c)'s 30–day limitation itself indicates that Congress intended the 30–day period to be narrowly construed as a jurisdictional provision, rather than a statute of limitations. *See Loeffler v. Frank,* 108 S.Ct. at 1969. Thus, the 30–day period is not subject to equitable tolling in suits against the USPS. Because Belton failed to name the Postmaster General as a defendant,[8] and because no one received notice of Belton's complaint, within the 30–day limitations period prescribed by statute, Belton cannot benefit from Rule 15(c) and file an amended complaint naming the proper party as a defendant.[9] Al-

---

8. Indeed, the Postmaster General has yet to be named as a defendant. Even though we granted Belton leave, in our prior decision, to file an amended complaint, naming the Postmaster General as a defendant, Belton has never filed such an amended pleading.

9. We note that, in *Hernandez v. Aldridge,* 866 F.2d 800 (5th Cir.1989), the Fifth Circuit, finding itself bound by precedent holding the 30–day period to be jurisdictional, *Bell v. Veterans Admin. Hosp.,* 826 F.2d at 360–61 (5th Cir.1987), affirmed a dismissal for lack of jurisdiction in a case in which the complaint, though "received" within the 30–day period, was not officially "filed" until after the 30–day period expired, when leave to proceed in forma pauperis was

granted. The Supreme Court, rather than addressing the issue of the whether the 30–day period is jurisdictional, vacated and remanded "to consider whether or not, in all of the circumstances of the case, receipt of the non-defective complaint by the district court Clerk's office constituted a "filing" for the purposes of 42 U.S.C. § 2000e–16(c) (1982)." *Hernandez v. Rice,* ── U.S. ──, 110 S.Ct. 1314, 108 L.Ed.2d 490 (1990). On remand, the Fifth Circuit held that the plaintiff's filing of a non-defective pleading was timely because it had been received by the court within the 30–day period. *Hernandez v. Aldridge,* 902 F.2d 386, 388 (5th Cir.1990). Thus, had Belton properly named the Postmaster General as a defendant, we

though, as we have observed, this result is harsh, particularly for a *pro se* litigant, it is a result which is required by the "explicit condition imposed by Congress," *Brown, supra,* 507 F.2d at 1307, that Title VII actions against the government be brought within the 30–day period.

## CONCLUSION

The motion to dismiss for lack of subject matter jurisdiction is granted, and the complaint is dismissed.[10]  The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

might have been able to consider his filing of the papers in the *Pro Se* Office before the 30–day period expired a "constructive filing" sufficient to toll the limitations period until his motion to proceed in forma pauperis was granted, assuming no further delays in service on Belton's part.

10.  Because we dismiss for lack of subject matter jurisdiction, we do not consider the USPS's motion for summary judgment.