# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1866

_____

| | | |
|---|---|---|
| Reynold D. Klein, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Patrick D. McGowan, in his capacity as | * | Appeal from the United States |
| Sheriff of Hennepin County, and in his | * | District Court for the District of |
| individual capacity; Hennepin County, | * | Minnesota. |
| a political subdivision of the State of | * | |
| Minnesota; Donald J. Omodt; Charles | * | |
| E. Venske; Donald H. Vodegal, in their | * | |
| official capacities with the Hennepin | * | |
| County Sheriff's Department, and in | * | |
| their individual capacities, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: October 20, 1999
Filed: December 20, 1999

_____

Before BOWMAN, ROSS and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

After resigning from his position as a technician assistant at the Hennepin County Sheriff's Department, Reynold D. Klein sued the county, two of his supervisors and the current and former sheriff for sexual harassment and constructive discharge under 42

U.S.C. §1983, 42 U.S.C. §2000e et seq. (Title VII), and the Minnesota Human Rights Act (MHRA), Minn. Stat. Ch. 363 (1996), and for intentional infliction of emotional distress. The district court[1] granted summary judgment for the defendants, and Klein appeals.

## A.

Reynold D. Klein worked as an aide in the sheriff's communications division, from May 5, 1980 until he resigned on May 10, 1996. In January 1997, more than ten months after leaving the sheriff's office, Klein filed a charge with the Equal Employment Opportunity Commission (EEOC) claiming that he had been constructively discharged because a hostile work environment caused his resignation. After receiving a right to sue letter, he filed this action against Hennepin County, Sheriff Patrick D. McGowan, former Sheriff Donald Omodt, former Captain Donald H. Vodegel, and Communications Division Lead Technician Charles E. Venske. In his brief Klein states that he was harassed because he was perceived as "being or behaving like a homosexual or of not behaving in the 'required manly' way," and claims he "would not have been treated the same way if he had been a woman." Klein later dismissed his claims against the two sheriffs. In his thirty-seven page declaration in opposition to the remaining defendants' motion for summary judgment, Klein alleged numerous incidents as part of the harassment. These allegations concerned various comments and innuendoes and claimed discrimination in promotion and assignment of duties. Klein does not supply dates for most of the incidents, but they appear to span his sixteen years of employment.

Venske supervised Klein from 1986 until September of 1995. Among Klein's complaints tied to a date are several incidents involving Venske. Klein asserts that

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Venske said to him in 1986, "If I ever find out you're a queer, I'll fire you," and in August 1989, "go home and play with yourself." Years later, on February 27, 1996, Venske announced that all of the technicians other than Klein would receive business cards. Venske issued Klein a disciplinary deficiency slip on March 28, 1996, after observing him flush a toilet with his foot. Venske noted on the slip that "Reynold has been verbally warned not to kick the flush handle on the men's stool. . . The handle has had to be replaced several times in the past year." Several weeks later when Klein called in sick less than an hour before his shift began, Venske told him, "[c]alling in 55 minutes before the start of your shift is against the rules. That's worthy of another deficiency report." Klein does not indicate that such a report was ever filed. Klein says that "during [his] last few days" of work, he found Venske and six technicians standing behind his workbench in a semi-circle "as a symbol of their solidarity among themselves and against [him]." He also makes other assertions without any time reference. He claims to have overheard Venske discussing his sexual preference with another employee, for example, and asserts that Venske harassed him by filing "unjustifiably low performance ratings" and that Venske assigned him menial tasks and periodically threatened him with dismissal.

Klein also claims that Venske failed to respond adequately to incidents of harassment he suffered from other employees. Klein alleges that he reported two separate incidents to Venske in September of 1993. Klein asserts that he overheard a co-worker say on September 2, "I'll use Vaseline; [Klein] knows all about that." When he notified Venske of this comment, he says Venske discouraged him from filing a formal complaint. Later that same month, Klein overheard a co-worker say in the locker room, "[h]e's a homo. . . He's come out of the closet." Klein was on the other side of a row of lockers when this was said, and the two other workers threw boxes over into his row. Klein alleges that Venske took no action after learning of this incident, although the affidavit of Lieutenant Bruce Lennox, Venske's immediate supervisor, indicates that Venske reported this as well as Klein's earlier complaint. Lennox states that he interviewed Klein, who told him that he did not wish to pursue

3

a formal complaint, and that Lennox nevertheless admonished the alleged harassers, distributed an anti-harassment memo to all employees in the division, and notified his superior officer of the chain of events. Klein also alleges that on some unspecified date Venske failed to act after overhearing another employee telling Klein "[y]ou're nothing but a fucking homo."

Although Klein's declaration is vague on the point, Vodegel appears to have been Venske's supervisor and the office captain from the time that Klein began working in 1986 until Vodegel retired in 1993. Klein alleges that when he reported some unspecified incident of sexual harassment to Vodegel in "1981 or 1982", Vodegel replied, "[t]hey're grown men. No, you can't change them." Klein also alleges that in 1985 Vodegel demanded of him "[a]re you a leader or a follower," and abruptly left the room "as if in a fit of rage" during the interchange that followed.

There is no evidence that Klein ever filed a formal complaint against the defendants with the Hennepin County Human Resources department. Klein asserts that he "was never told or informed about any process for reporting sexual . . . harassment", although elsewhere in his declaration he describes a conversation he had with Venske concerning whether he should file a report following an incident of harassment. Appellees offer the affidavit of Syl Booth, the Hennepin County employee responsible for investigating all harassment complaints made by county employees. Booth describes in detail the grievance procedure for employees who wish to report harassment and states that all county employees receive a pamphlet which tells them what constitutes harassment and how to file a complaint. In his affidavit Lieutenant Lennox claims that he discussed the formal grievance procedure with Klein.

Before the district court ruled on the defendants' motion for summary judgment, Klein voluntarily dismissed all counts against defendants McGowan and Omodt and his state law claims. The remaining claims against the county, Venske, and Vodegal under Title VII and §1983 were dismissed by the district court on the motion of the

4

defendants for summary judgment. The court ruled that the Title VII claims were not timely and that Klein had not made out a prima facie case that the violations alleged were severe or pervasive or based on sex and that his §1983 claim failed because he had not made out a prima facie case of constructive discharge.

On appeal, Klein argues that there are material issues of fact related to his claims and to whether a hostile work environment caused him to be constructively discharged. Appellees argue that Klein failed to make out a prima facie case of a Title VII violation because the alleged conduct was not severe or pervasive, and was not due to his sex, that discrimination based upon sexual orientation does not fall within Title VII, and that the bulk of his allegations fall outside the 300 day limitations period. Appellees assert that Klein has not made out a §1983 violation because he has not shown that a reasonable person would have felt compelled to resign, he has not established sufficient involvement of the individual defendants to make them liable, Venske and Vodegal are entitled to qualified immunity, and the claim is time barred.

**B.**

Our review of a grant of summary judgment is de novo. Hanenburg v. Principal Mutual Life Insurance Co., 118 F.3d 570, 573 (8th Cir. 1997). While we view the facts in a light most favorable to the non-moving party, mere allegations which are not supported with specific facts are not enough to withstand the motion. Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). See also Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1110 (8th Cir. 1998) (Conclusory assertions insufficient to make prima facie showing of Title VII violation).

Title VII prohibits employment discrimination based on sex. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998). A court evaluating a Title VII claim must evaluate the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating,

5

or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Phillips, 156 F.3d at 888, quoting Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). Simple teasing, offhand comments, and isolated incidents generally cannot amount to severe or pervasive harassment. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (8th Cir. 1999).

Before bringing a Title VII action, a plaintiff must file a charge with the EEOC within 300 days of the event giving rise to the cause of action. 42 U.S.C. §2000e-5(e). Conduct which occurred more than 300 days before the date of filing cannot be grounds for a suit unless it is part of a continuing violation which is systematic or serial. Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 572-73 (8th Cir. 1997). To avail himself of this exception, a plaintiff must demonstrate that some incident of harassment occurred within the 300 day limitations period, Scott v. St. Paul Postal Serv., 720 F.2d 524, 525 (8th Cir. 1983) (per curiam), and that there is a sufficient nexus between that incident and the other instances of harassment. West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995).

In order to make out a prima facie case that he was subjected to a hostile work environment a plaintiff must show that (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999). Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job. Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 574 (8th Cir. 1997). The conduct complained of must have been severe or pervasive enough to create an objectively hostile or abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). If a plaintiff establishes that a supervisor with authority over him created a hostile work environment, he may be able to hold the employer

vicariously liable. Faragher v. City of Boca Raton, 524 U.S. 775, ---, 118 S.Ct. 2275, 2292-3 (1998), Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, ---, 118 S.Ct. 2257, 2270 (1998).

Because Klein filed his Title VII charge with the EEOC on January 21, 1997, he must demonstrate that conduct after March 28, 1996 constituted sexual harassment. Klein claims several incidents of alleged harassment occurred after that date: the filing of a deficiency slip, the threatened filing of a deficiency slip, Venske's refusal to issue him business cards, and his observation that Venske and the technicians were standing "in solidarity".

The four incidents alleged during the 300 day limitation period do not amount to severe or pervasive harassment, nor are they tied to sex. Klein has not produced evidence that Venske's use of the office disciplinary procedure was based on sex or that he himself did not do what was charged. Similarly, Klein has not set forth sufficient facts to support his claim that Venske's allegedly discriminatory distribution of business cards or his standing with the technicians amounted to harassment on the basis of sex. Moreover, these incidents did not rise to the level of severe or pervasive harassment. Other allegations about conduct occurring at some unspecified time, or between 1986 and March 28, 1996, may not be considered since they have not been shown to fall within the 300 day limitation period and Klein has not established a continuing violation. The district court did not err in dismissing his Title VII claim as untimely.

Klein claims that the treatment he received in the sheriff's department also violated his substantive due process rights. Substantive due process may be violated if state action either shocks the conscience or offends judicial notions of fairness or human dignity. Weimer v. Amen, 870 F.2d 1400, 1405 (8th Cir.1989). To meet his burden a §1983 plaintiff must demonstrate that the government action complained of is "truly irrational," that is "something more than ... arbitrary, capricious, or in violation of state law." Id.

7

Klein cites Woodward v. City of Worland, 977 F.2d 1392 (10th Cir. 1992), as the central support for his substantive due process claim under §1983. In that case the plaintiff alleged numerous instances of sexual harassment occurring during several years of employment, but she continued to work without filing a complaint. The plaintiff did not notify her employer of the harassment, nor did she allege that she had believed that requesting disciplinary action against her harassers would be ineffective. The defendants were entitled to summary judgment because the plaintiff had failed to establish a genuine dispute as to whether a reasonable person would have believed that there was no reasonable alternative to resignation. A plaintiff must show considerably more than unpleasant working conditions. Id. at 1402. An employee has a §1983 cause of action only when an employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit. Id. at 1401 quoting Irving v. Dubuque Packing Co., 689 F.2d 170, 172 (10th Cir. 1982) (emphasis in original). A §1983 plaintiff must also take steps short of resignation that a reasonable person would take to make her working conditions more tolerable. Id.

Like the Woodward plaintiff, Klein failed to seek formal redress of his grievances. He never filed a complaint during his sixteen years of employment, and he did not establish that a reasonable person would have believed that filing a formal complaint in his circumstances would be fruitless. The very authority which Klein cites indicates that he was not constructively discharged because he did not take reasonable steps to seek relief.

Klein has not established a prima facie case under §1983, and the incidents about which he complains, spread out as they are over many years, do not rise to the level of shocking the conscience. While tasteless and inappropriate comments were made and other events no doubt upset him, Klein has not shown that Venske or Vodegal engaged in or were responsible for conduct so arbitrary or capricious as to give rise to a constitutional tort claim.

8

For these reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.