UNITED STATES DISTRICT COURT 
 NORTHERN DISTRICT OF ALABAMA 
 NORTHEASTERN DIVISION 

JOHN SWAUGER, ) 
 ) 
 Plaintiff ) 
 ) 
vs. ) Case No. 5:19-cv-01039-HNJ 
 ) 
ROBERT P. ASHLEY, JR., Director, ) 
DEPT. OF DEFENSE - ) 
DEFENSE INTELLIGENCE ) 
AGENCY, ) 
 ) 
 Defendant. ) 

 MEMORANDUM OPINION AND ORDER 

This action proceeds before the court on Defendant Robert P. Ashley’s Motion 
to Dismiss. (Doc. 7). Ashley seeks an order dismissing John Swauger’s disability 
discrimination, retaliation, and hostile work environment claims against him due to the 
court’s lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 
12(b)(1), or, in the alternative, due to a failure to state a claim upon which relief can be 
granted pursuant to Federal Rule of Civil Procedure 12(b)(6). 
The court concludes Swauger’s claims warrant dismissal because he failed to 
exhaust his administrative remedies, and equitable tolling cannot relieve such failure. 
Therefore, based upon the analysis herein, the court GRANTS Ashley’s motion to 
dismiss for Swauger’s failure to exhaust his administrative remedies and DISMISSES 
WITH PREJUDICE Swauger’s complaint. 
 STANDARD OF REVIEW 
“Federal courts are courts of limited jurisdiction” and, as such, possess the power 

to hear cases only as authorized by the Constitution or United States’ laws. Kokkonen v. 
Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). “[B]ecause a federal court is 
powerless to act beyond its statutory grant of subject matter jurisdiction, a court must 
zealously insure that jurisdiction exists over a case.” Smith v. GTE Corp., 236 F.3d 1292, 

1299 (11th Cir. 2001). “If the court determines at any time that it lacks subject-matter 
jurisdiction, the court must dismiss the action.” Fed. R. Civ. P. 12(h)(3). In addition, 
federal courts possess “an independent obligation to determine whether subject-matter 
jurisdiction exists, even in the absence of a challenge from any party.” Arbaugh v. Y & 

H Corp., 546 U.S. 500, 514 (2006). 
Federal Rule of Civil Procedure 12(b)(1) permits a district court to dismiss a case 
for “lack of subject-matter jurisdiction.” Fed. R. Civ. P. 12(b)(1). The plaintiff bears 
the burden of persuasion on establishing the court’s subject matter jurisdiction. OSI, 

Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (citing Thomson v. Gaskill, 315 U.S. 
442, 446 (1942)). 
The Eleventh Circuit establishes particular modes of review for Rule 12(b)(1) 

challenges to subject matter jurisdiction: 
[A] motion to dismiss for lack of subject matter jurisdiction pursuant to 
Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual 
challenge to the complaint. If the challenge is facial, the plaintiff is left 
 2 
with safeguards similar to those retained when a Rule 12(b)(6) motion to 
dismiss for failure to state a claim is raised . . . Accordingly, the court must 
consider the allegations in the plaintiff’s complaint as true . . . A facial 
attack on the complaint requires the court merely to look and see if the 
plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and 
the allegations in his complaint are taken as true for the purposes of the 
motion . . . 

Factual attacks, on the other hand, challenge the existence of subject 
matter jurisdiction in fact, irrespective of the pleadings, and matters 
outside the pleadings, such as testimony and affidavits are considered. 
Furthermore, . . . the district court has the power to dismiss for lack of 
subject matter jurisdiction on any of three separate bases: (1) the 
complaint alone; (2) the complaint supplemented by undisputed facts 
evidenced in the record; or (3) the complaint supplemented by undisputed 
facts plus the court’s resolution of disputed facts. 

McElmurray v. Consol. Gov’t of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007) 
(citing, inter alia, Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981); Lawrence v. Dunbar, 
919 F.2d 1525, 1529 (11th Cir. 1990)) (internal quotation marks and alterations omitted). 
Therefore, a factual challenge to subject matter jurisdiction typically permits a 
“trial court . . . to weigh the evidence and satisfy itself as to the existence of its power 
to hear the case.” Williamson, 645 F.2d at 412–13. No presumptive truthfulness would 
attach to a plaintiff’s claims, and “the existence of disputed material facts [would] not 
preclude the trial court from evaluating for itself the merits of jurisdictional claims.” 
Id.; see also Lawrence, 919 F.2d at 1528–29. 
A plaintiff must exhaust his or her administrative remedies as a “jurisdictional 
prerequisite” to filing a lawsuit under the Rehabilitation Act. Crawford v. Babbitt, 186 
 3 
F.3d 1322, 1326 (11th Cir. 1999); accord Thomas v. Nicholson, 263 F. App’x 814, 815 n.1 
(11th Cir. 2008) (per curiam) (“It is well-settled that, as a jurisdictional prerequisite, a 

federal employee must timely exhaust administrative remedies prior to filing an 
employment discrimination suit under Title VII.”) (citing Crawford, 186 F.3d at 1326); 
Brown v. Snow, 440 F.3d 1259, 1263 (11th Cir. 2006) (“[O]ur case law establishes that ‘[a] 
federal employee must pursue and exhaust her administrative remedies as a 

jurisdictional prerequisite to filing a Title VII action . . . .’”) (second alteration in 
original) (quoting Crawford, 186 F.3d at 1326); see Doe v. Garrett, 903 F.2d 1455, 1461 
(11th Cir. 1990) (“[P]rivate actions against federal government employers under the 
[Rehabilitation] Act . . . must satisfy ‘the requirement of exhaustion of administrative 

remedies in the manner prescribed by section [794a(a)(1)] and thus by Title VII.’”) 
(second alteration in original) (quoting Milbert v. Koop, 830 F.2d 354, 357 (D.C. Cir. 
1987)).1 

1 The court notes that in Milam v. United States Postal Service, 674 F.2d 860, 862 (11th Cir. 1982), the 
Eleventh Circuit ruled that “[t]imely filing [a complaint pursuant to Title VII’s statute of limitations] 
is not a prerequisite to federal jurisdiction. Permitting suit after the period has ended would not, 
therefore, work an extension of our jurisdiction.” Milam, 674 F.2d at 862. Milam portrays a significant 
factual distinction foreclosing its application to the instant case. 

The plaintiff in Milam filed a civil complaint beyond the filing period prescribed in 42 U.S.C. § 2000e-
16(c), the Title VII section directly applicable to federal employment. See Milam, 674 F.2d at 861. 
Notwithstanding this procedural defect, however, the plaintiff exhausted all other administrative 
remedies upon which the government conditioned its waiver of sovereign immunity under Title VII. 
That is, the plaintiff exhausted her discrimination claim in full before the United States Postal Service. 
Thus, the issue in Milam did not concern whether the plaintiff “g[ave] the agency the 
information . . . need[ed] to investigate and resolve the dispute” – the central purpose of 
administrative exhaustion. Wade v. Sec’y of the Army, 796 F.2d 1369, 1377 (11th Cir. 1986); see Ass’n for 
 4 
Accordingly, a Rule 12(b)(1) motion to dismiss for lack of subject matter 
jurisdiction constitutes the proper vehicle for challenging a plaintiff’s failure to exhaust 

administrative remedies in the federal employment sector. See Brown, 440 F.3d at 1263 
(“We have applied the exhaustion requirement to affirm dismissals for lack of subject 
matter jurisdiction when the employee did not provide information requested by the 
investigating agency.”); Hawkins v. Esper, 5:18-cv-00127-AKK, 2019 WL 5963520, at *5 

(N.D. Al. Nov. 13, 2019) (the plaintiff failed to exhaust his administrative remedies 
pursuant to Title VII, thus precluding the court’s subject matter jurisdiction over his 
claims); Dillard v. Runyon, 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996) (“If a [Title VII] 
claimant has not met the filing requirements, . . . there is no waiver of sovereign 

immunity, and accordingly, no subject matter jurisdiction. . . .Accordingly, defendant’s 
motion here properly is characterized as one pursuant to Fed. R. Civ. P. 12(b)(1) to 
dismiss for lack of subject-matter jurisdiction.”); 5B Charles Alan Wright, Arthur R. 

Retarded Citizens, Inc. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987) (“[E]xhaustion . . . serves a number 
of important purposes, including (1) permitting the exercise of agency discretion and expertise on 
issues requiring these characteristics; (2) allowing the full development of technical issues and a factual 
record prior to court review; (3) preventing deliberate disregard and circumvention of agency 
procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the 
agency the first opportunity to correct any error.”). As a result, Milam did not involve the same 
sovereign immunity and corollary separation-of-powers concerns present in the instant case. C.f. 
Dillon v. Runyon, 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996) (“If a claimant has not met the filing 
requirements, . . . there is no waiver of sovereign immunity, and accordingly, no subject matter 
jurisdiction. Put differently, the government has not consented to be sued by a federal employee who 
has neither met with her EEO counselor within 45 days of the alleged discriminatory act, nor 
satisfactorily explained her failure to do so.”). Accordingly, the court applies Crawford, not Milam, to 
the exhaustion issue at bar. 
 5 
Miller & May Kay Kane, Federal Practice and Procedure § 1350 (3d ed. 1995) (“[T]he 
Rule 12(b)(1) motion to dismiss for a lack of subject matter jurisdiction . . . may be 

appropriate when the plaintiff has failed to exhaust administrative procedures that have 
been established, typically by statute, as a prerequisite to his bringing suit.”).2 

2 Although “generally the [Supreme] Court has attached jurisdictional consequences to . . . the 
Government’s waiver of [sovereign immunity] [,] . . . [i]t now is settled that courts should not accord 
jurisdictional status to a statutory condition—even one attached to the Government’s waiver of 
immunity—unless ‘Congress has “clearly state[d]’” as much.” 14 Charles Alan Wright, Arthur R. 
Miller & Mary Kay Kane, Federal Practice and Procedure § 3654 (4th ed. 1998) (quoting United States 
v. Kwai Fun Wong, 575 U.S. 402, 402, 409 (2015)). Particularly relevant here, in Fort Bend County v. Davis, 
139 S. Ct 1843 (2019), the Court ruled that “Title VII’s charge-filing requirement is a processing rule, 
albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of 
courts.” Fort Bend County, 139 S. Ct. at 1851. Notably, however, Fort Bend County involved a Title VII 
action against a private defendant, and thus did not present the sovereign immunity concerns arising 
when, as here, a plaintiff initiates a Title VII action against the federal government. 

Nonetheless, given the Court’s “distinction between jurisdictional prescriptions and nonjurisdictional 
claim-processing rules, which ‘seek to promote the orderly progress of litigation by requiring that the 
parties take certain procedural steps at certain specified times’”, the Eleventh Circuit may revisit its 
holding in Crawford v. Babbitt, 186 F.3d 1322 (11th Cir. 1999) that a plaintiff’s exhaustion of 
administrative remedies pursuant to Title VII constitutes a jurisdictional prerequisite to filing a civil 
action. See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co., Nos. 16-13596; 16-13601; 
16-15467, 2020 WL 1074420, at *6 (11th Cir. Mar. 6, 2020) (“In recent years, the Supreme Court has 
been careful to distinguish between jurisdictional rules, which define the cases or persons within a 
court’s adjudicatory authority, and mandatory claim-processing rules, which govern the orderly 
process of litigation.”) (citing Fort Bend County, 139 S. Ct. at 1849); Hollis v. W. Acad. Charter, Inc., 782 
F. App’x 951, 954 (11th Cir. 2019) (“A plaintiff must first exhaust his administrative remedies with the 
[EEOC] before filing a complaint for discrimination under Title VII. . . .This is a mandatory claims 
processing rule, not a jurisdictional prerequisite . . . .”) (citing Fort Bend County, 139 S. Ct. at 1849); 
Reddick v. Republic Parking Sys., 2:17-cv-00728-KOB, 2019 WL 2601547, at *1 (N.D. Ala. June 25, 2019) 
(“Timely filing a charge of discrimination with the EEOC is not required to invoke a district court’s 
subject matter jurisdiction over a Title VII claim.”) (emphasis in original) (citing Fort Bend County, 139 
S. Ct. 1843). 

The court further notes that in Bryant v. Rich, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit 
expounded upon the nature of a “motion to dismiss for failure to exhaust administrative remedies.” 
Bryant, 530 F.3d at 1374. According to the Court, such a motion does not attack the court’s subject 
matter jurisdiction, but functions “like a defense for lack of subject matter jurisdiction in one 
important sense: Exhaustion of administrative remedies is a ‘matter[] in abatement, and ordinarily 
 6 
And to be sure, a plaintiff’s failure to comply with administrative filing deadlines 
constitutes a failure to exhaust administrative remedies, notwithstanding a plaintiff’s 

timely filing of a complaint in federal court. See Hall v. Potter, No. 06-CV-5003 

[does] not deal with the merits.’” Id. (alterations in original) (quoting 5C Charles Alan Wright & Arthur 
R. Miller, Federal Practice and Procedure § 1360 at 78 n.15 (3d ed. 2004)). The Court then prescribed 
a two-step inquiry for assessing a motion to dismiss for failure to exhaust administrative remedies: 

First, the court looks to the factual allegations in the defendant’s motion to dismiss 
and those in the plaintiff’s response, and if they conflict, takes the plaintiff’s version 
of the facts as true. If, in that light, the defendant is entitled to have the complaint 
dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . 

If the complaint is not subject to dismissal at the first step, where the plaintiff’s 
allegations are assumed to be true, the court then proceeds to make specific findings 
in order to resolve the disputed factual issues related to exhaustion. The defendant[] 
bear[s] the burden of proving that the plaintiff has failed to exhaust his available administrative 
remedies. Once the court makes findings on the disputed issues of fact, it then decides 
whether under those findings the [plaintiff] has exhausted his available administrative 
remedies. 

Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (emphasis added) (internal citations omitted) 
(citing, inter alia, Bryant, 530 F.3d at 1373–74). 

Although Bryant and Tuner arose in the context of the Prison Litigation Reform Act (“PLRA”) – not 
Title VII or the Rehabilitation Act – in Tillery v. United States Dep’t of Homeland Sec., 402 F. App’x 421 
(11th Cir. 2010), the Eleventh Circuit extended Turner to motions to dismiss for failure to exhaust 
administrative remedies in Title VII actions. 

Nevertheless, Bryant and Turner do not apply to the instant case. Crawford predates Bryant and Turner, 
and thus constitutes binding precedent because “only the Supreme Court or [the Eleventh Circuit] 
sitting en banc can judicially overrule a prior panel decision.” Cargill v. Turpin, 120 F.3d 1366 (11th Cir. 
1997) (quoting United States v. Woodard, 938 F.2d 1255, 1258 (11th Cir. 1991), cert. denied, 502 U.S. 1109 
(1992)). Therefore, Bryant and Turner may become applicable if the Eleventh Circuit or the Supreme 
Court extends Fort Bend County to Title VII actions against the federal government in abrogation of 
Crawford. Accordingly, although Ashley avers Swauger’s complaint warrants dismissal pursuant to the 
rubric of Bryant and Turner “for failure to timely exhaust administrative remedies”, the court heeds his 
designation of the filing as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, 
and thus, subject to the dictates of Crawford. (Doc. 7 at 7); see Dillon, 928 F. Supp. at 1325. 

And alternatively, the court would reach the same result even if Bryant, Turner, and Tillery applied to 
the exhaustion issue at bar rather than Crawford. 
 7 
(JFB)(AKT), 2009 U.S. Dist. LEXIS 18955, at *18–19 (E.D.N.Y Mar. 4, 2009) (“Where 
a plaintiff fails to appeal a decision to the EEOC within the thirty-day statutory limit 

but does ultimately file a civil action within ninety days of the EEOC’s final 
determination of that untimely appeal, the timely filing of the federal court action does 
not cure that plaintiff’s original failure to abide by the requisite filing periods.”). The 
plaintiff bears the burden of proving he exhausted his administrative remedies. See 

Crawford, 186 F.3d 1322; OSI, Inc., 285 F.3d at 951 (“In the face of a factual challenge 
to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction 
exists.”). 
 STATUTORY AND REGULATORY FRAMEWORK 

The Rehabilitation Act prohibits federal and private employers from 
discriminating against employees on the basis of a disability. 29 U.S.C. § 701, et seq., as 
amended. The Rehabilitation Act incorporates by reference the “remedies, procedures, 
and rights” prescribed in § 2000e-16 of the Civil Rights Act of 1964. Id. § 794a(a)(1). 

Thus, an aggrieved federal employee must press a disability discrimination claim 
pursuant to the administrative complaint and appeals process provided in the Equal 
Employment Opportunity Commission (“EEOC”) regulations. See id; 42 U.S.C. 

§ 2000e-16(c); 29 C.F.R. § 1614.103(a). 
The employee must first attempt to resolve his or her claim through informal 
counseling. Id. § 1614.105(a). If informal counseling fails to resolve the matter, the 
 8 
employee may file a discrimination complaint with the allegedly offending agency. 
Id. § 1614.106(a)-(c). The agency must investigate the matter upon receipt of the 

complaint, after which the employee may request a hearing before an EEOC 
administrative judge (“AJ”). Id. §§ 1614.106(e), 1614.108(f). Once the AJ renders a 
decision, the agency must “take final action on the complaint by issuing a final order 
within 40 days of receipt of the hearing file and the administrative judge’s decision.” 

Id. § 1614.110(a). If the agency fails to issue a final order within the forty-day period, 
the AJ’s decision becomes the final action of the agency by operation of law. 
Id. § 1614.109(i). 
The employee may file an appeal from an agency’s adverse, final action with the 

EEOC Office of Federal Operations (“OFO”) within thirty days of the receipt thereof. 
Id. §§ 1614.401(a), 1614.402(a). Alternatively, an employee who elects not to file an 
appeal with the OFO may file a civil action in the district court within ninety days of 
receipt of the agency’s final action. Id. § 1614.407(a). “[W]hen a complainant 

designates an attorney as a representative, service of all official correspondence shall be 
made on the attorney and the complainant, but time frames for receipt of materials shall 
be computed from the time of receipt by the attorney.” Id. § 1614.605(d)). However, 

notwithstanding the designation of an attorney, the employee “shall at all times be 
responsible for proceeding with the complaint.” 29 C.F.R. § 1614.605(e). 

 9 
 BACKGROUND 
Plaintiff John Swauger alleges that the Defense Intelligence Agency (“DIA”) 

fostered a hostile work environment, and discriminated and retaliated against him on 
the basis of his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791, et seq., 
as amended. (Doc. 1). On July 15, 2013, Swauger submitted to the DIA a “Designation 
of Representative for Discrimination Complaint” form to provide notice that attorney 

Adam Morel would represent him in any future discrimination complaint. (Doc. 15). 
Swauger filed a discrimination complaint with the EEOC on February 21, 2014. (Doc. 
7-3 at 1). After the EEOC investigated Swauger’s complaint, Swauger requested a 
hearing before an EEOC AJ. (Id.) On March 24, 2015, the DIA filed a motion for 

summary judgment before the AJ. (Id.) 
On December 12, 2016, the AJ issued an order and decision granting the DIA’s 
motion for summary judgment. (Doc. 7-1 at 11–46). The AJ appended thereto a 
certificate of service attesting that he mailed the decision and order to Swauger and 

Morel on December 12, 2016. (Id. at 46). The certificate of service further stated: “For 
timeliness purposes, the Commission will presume that this Decision and Order was 
received within five (5) calendar days of mailing.” (Id.) 

On January 27, 2017, the DIA issued a final order adopting in full the AJ’s 
December 12, 2016, order and decision. (Id. at 1–8). The DIA appended thereto a 
certificate of service guaranteeing that on January 27, 2017, it transmitted the final order 
 10 
to Swauger and Morel via “Certified Mail – Affirmative Receipt Requested.” (Id. at 8). 
Both the DIA’s and AJ’s certificates of service display identical information for Morel’s 

address. (Compare Doc. 7-1 at 8 with Doc. 7-1 at 46). The United States Postal Service 
attempted to deliver the final order to Morel on February 6, 2017, and therewith it left 
a notice at Morel’s address. (Doc. 18 at 9). The USPS returned the correspondence to 
the DIA on September 27, 2017, marking it as “Unclaimed/Being Returned to Sender.” 

(Doc. 18 at 12). 
On October 4, 2017, Swauger filed an appeal with the EEOC’s OFO. (Doc. 7-
3 at 1). On April 3, 2019, the OFO dismissed the appeal as untimely. (Id. at 1–5). The 
dismissal order stated: 

On appeal, [Morel] notes that the [DIA] had not issued a final order. 
However, the [DIA] provided evidence showing that it issued a final 
order, which was delivered to [Swauger] on February 6, 2017. A delivery 
attempt was made to [Morel] on February 6, 2017, but the copy of the 
final order was undelivered, marked as “Unclaimed/Being Returned to 
Sender” on September 27, 2017, and ultimately returned to the [DIA] on 
October 5, 2017.[3] 

(Id. at 2). The OFO acknowledged that pursuant to 29 C.F.R. § 1614.605(d), “when a 
complainant designates an attorney as a representative . . . time frames for receipt of 
materials shall be computed from the time of receipt by the attorney.” (Id.) (citing 29 

3 The OFO noted “[t]here is no explanation as to why the U.S. Postal Service took about 7 months to 
return [the copy] to the [DIA].” (Doc. 7-3 at 2 n.2). 

 11 
C.F.R. § 1614.605(d)). However, the OFO explained that while Morel did not receive 
the DIA’s final order, he did receive the AJ’s December 12, 2016, decision. (Id.) 

To that end, the OFO noted that the AJ’s decision “informed [Swauger] that he 
had appeal rights starting 40 calendar days after the AJ’s decision, if the [DIA] did not 
issue a final order.” (Id.) Thus, the OFO reasoned, Morel should have treated the AJ’s 
decision as the DIA’s final action for purposes of appeal when he failed to receive the 

DIA’s final order within forty days of his receipt of the AJ’s decision. (Id.) Pursuant 
to the AJ’s certificate of service, Morel presumptively received the AJ’s decision on 
December 17, 2016 -- five days after the December 12, 2016, mailing date. (Id. at n.3). 
Accordingly, the OFO concluded, the AJ’s decision became appealable on January 26, 

2017 – which represents forty days after December 17, 2016 -- and Swauger’s appeal to 
the OFO became due within thirty days thereafter, on February 27, 2017.4 (Id.) 
Swauger timely filed the complaint in this action on July 3, 2019. (Doc. 1). 
Ashley avers Swauger’s complaint warrants dismissal on three bases. First, Ashley 

contends the court may not entertain Swauger’s claims because he failed to exhaust his 
administrative remedies by filing an untimely appeal with the OFO. (Doc. 7 at 7–12). 
Second, Ashley asserts the complaint fails to state a claim upon which relief can be 

4 The thirtieth day after December 17, 2016, occurred on Saturday, February 25, 2017. Thus, 
Swauger’s appeal became due the next business day, Monday, February 27, 2017. (Doc. 7-3 at 2 n.3) 
(citing 29 C.F.R. § 1614.604[d]). 

 12 
granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because he does not 
constitute the proper defendant for Swauger’s claims. (Id. at 12–15). Finally, Ashley 

seeks dismissal of Swauger’s retaliation claim pursuant to Rule 12(b)(6) for failure to 
state a claim upon which relief can be granted. (Doc. 7 at 15–19). 
 DISCUSSION 
As a preliminary matter, the court must determine whether Ashley’s Rule 

12(b)(1) motion to dismiss for lack of subject matter jurisdiction raises a facial or a 
factual challenge to the court’s jurisdiction. As previously discussed, facial challenges 
attack subject matter jurisdiction “based on the allegations in the complaint, and the 
district court takes the allegations as true in deciding whether to grant the motion.” 

Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). “In other words, the 
allegations themselves reveal that subject matter jurisdiction is deficient.” Miccosukee 
Tribe of Indians v. Cypress, 975 F. Supp. 2d 1298, 1304 (S.D. Fla. 2013). 
By contrast, “[i]f a defendant makes a ‘factual attack’ upon the court’s subject 

matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or 
other evidentiary materials.” Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).5 
Further, “a plaintiff is also required to submit facts through some evidentiary method.” 

Id. Thus, “[i]n a factual attack, the Court may consider matters outside the Complaint, 

5 The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions decided prior to 
October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). 

 13 
and is free to weigh evidence and satisfy itself as to the existence of its power to hear 
the case.” Hawthorn Corp. v. United States, 98 F. Supp. 3d 1226, 1232 (M.D. Fla. 2015). 

In this case, Ashley’s jurisdictional challenge relies upon the DIA’s final order 
and the OFO’s dismissal order, each of which Ashley appended to his motion as 
extrinsic matters outside the pleadings.6 Likewise, Swauger appended to his response 
in opposition to Ashley’s motion the DIA’s final order and a Designation of 

Representative for Discrimination Complaint. (Doc. 15-1). Based upon the parties’ 
submission of extrinsic materials outside the pleadings, Ashley’s motion represents a 
factual challenge to the court’s subject matter jurisdiction. See Chevaldina v. Katz, 787 F. 
App’x 651, 653 (11th Cir. 2019) (per curiam) (defendants mounted a factual jurisdictional 

challenge by presenting deposition testimony and other extrinsic evidence in support 
of its Rule 12(b)(1) motion); Irvin v. United States, No. 1:07-CV-0926-ECS, 2007 U.S. 
Dist. LEXIS 105567, at *7 (N.D. Ga. Oct. 9, 2007) (“Defendant’s motion to dismiss 
for lack of subject matter jurisdiction is based on Plaintiff’s failure to prove that he has 

exhausted his administrative remedies, and both Plaintiff and Defendant have attached 

6 Ashley relies upon the OFO’s dismissal order for the timeframes cited therein regarding the 
transmission of the DIA’s final order to Swauger and Morel. (Doc. 7 at 10–11). As aforenoted, the 
OFO’s dismissal order asserts that the DIA “provided evidence showing that it issued a final order, 
which was delivered to [Swauger] on February 7, 2017. A delivery attempt was made to [Morel] on 
February 6, 2017, but the copy of the final order was undelivered, marked as ‘Unclaimed/Being 
Returned to Sender’ on September 27, 2017, and ultimately returned to the [DIA] on October 5, 
2017.” (Doc. 7-3 at 2). Because the OFO’s dismissal order merely referenced the evidence the DIA 
provided regarding the transmission of the final order to Swauger and Morel, the court issued an order 
for Ashley to produce such evidence. (Doc. 17). Ashley then filed the relevant USPS tracking 
histories. (Doc. 18). 
 14 
exhibits on this point. Thus, the inquiry is in the nature of a factual attack and 
necessarily requires the examination of evidence outside the complaint to determine if 

Plaintiff, indeed, failed to exhaust his administrative remedies.”). Accordingly, the court 
“will weigh the evidence in a manner fit to satisfy itself of the existence of subject matter 
jurisdiction over [Swauger’s] claims.” Irvin, 2007 U.S. Dist. LEXIS 105567, at *7. 
Pursuant to the analysis herein, the court concludes it must dismiss Swauger’s 

complaint for failure to exhaust his administrative remedies. The court thus dismisses 
Swauger’s complaint on this basis alone, and will not consider Ashley’s alternative 
theories of dismissal. 
“The rule is well settled that if a letter properly directed is proved to have been 

either put into the post office or delivered to the postman, it is presumed, from the 
known course of business in the post office department, that it reached its destination 
at the regular time, and was received by the person to whom it was addressed.” Rosenthal 
v. Walker, 111 U.S. 185, 193 (1884); accord Hagner v. United States, 285 U.S. 427, 430 

(1932). Recognizing this established common law rule, the Eleventh Circuit opined 
that proof of a proper address, adequate postage, and placement in the mail creates a 
rebuttable presumption the addressee received the item. See In Re E. Coast Brokers & 
Packers, Inc., 961 F.2d 1543, 1545 (11th Cir. 1992) (A rebuttable presumption of receipt 

arises if “(1) the document was properly addressed; (2) the document was stamped; and 
(3) the document was mailed.”); accord Konst v. Fla. E. Coast Ry., 71 F.3d 850, 851 (11th 
 15 
Cir. 1996); Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1240–42 (11th Cir. 2002). 
Furthermore, the Eleventh Circuit recognizes “a presumption of three days for receipt 

by mail.” Kerr v. McDonald’s Corp., 427 F.3d 947, 953 n.9 (11th Cir. 2005) (citing Zillyette 
v. Capital One Fin. Corp., 179 F.3d 1337, 1342 (11th Cir. 1999)). 
In support of his motion to dismiss, Ashley advances the same argument the 
OFO set forth in dismissing Swauger’s appeal: On the fortieth day after the issuance 

of the AJ’s decision, Swauger should have treated the AJ’s decision as the DIA’s final 
action and appealed such decision to the OFO within thirty days. (Doc. 7 at 10–12). 
In response, Swauger maintains that Ashley’s argument fails because the DIA in fact 
issued a final order, which Morel never received. (Doc. 15 at 1–2, n.1). Swauger further 

contends the AJ’s decision failed to indicate it would become the DIA’s final action if 
the DIA took no action thereupon within forty days, or that an appeal from the AJ’s 
decision to the OFO would become due within thirty days thereafter. (Id.) 
Setting aside the foregoing contentions,7 the court concludes Morel received the 

DIA’s final order pursuant to this Circuit’s three-day presumption of receipt; thus, 

7 Pursuant to the analysis herein, Swauger’s complaint warrants dismissal notwithstanding the 
arguments the parties advance in their briefing. In any event, the court discerns a deficiency in the 
AJ’s decision which forecloses Ashley’s argument. 

Pursuant to 29 C.F.R. § 1614.110(a), an agency’s final order “shall contain notice of the complainant’s 
right to appeal to the [OFO].” 29 C.F.R. § 1614.110(a). This provision required the AJ’s decision to 
adequately notify Swauger of his appeal rights if, as Ashley contends, Swauger should have treated the 
AJ’s decision as the DIA’s final order when Morel failed to receive the DIA’s final order within forty 
days of the AJ’s decision. See Moncus v. Johanns, No. 2:03CV416-W, 2006 U.S. Dist. LEXIS 4648, at 
*28–29 (M.D. Ala Jan. 20, 2006) (an AJ’s decision must contain notice of the complainant’s appeal 
 16 
Swauger failed to timely file his appeal with the OFO and, in turn, failed to exhaust his 
administrative remedies. As discussed above, pursuant to the common law and 

Eleventh Circuit precedent, the court presumes the addressee of correspondence -- 

rights pursuant to § 1614.110(a) when it becomes the agency’s final order by operation of law); Staropoli 
v. Donahoe, 786 F. Supp. 2d 384, 390 (D.C. Cir. 2011) (“It would frustrate the very purpose of the 
notice regulations to hold that [AJ] decisions may automatically trigger the statute of limitations 
without providing notices equivalent to those required by § 1614.100.”). 

The AJ’s decision notified Swauger, in relevant part, that he “may appeal to the [OFO] within 30 
calendar days of receipt of the [DIA’s] final order” and “may only appeal directly from [the] decision 
in the event that the [DIA] has not issued its final order within 40 calendar days of its receipt of the 
hearing file and [the] decision.” (Doc. 7-1 at 44). However, pursuant to Chapter 9 of the EEOC’s 
Management Directive 110, the AJ’s decision must inform the complainant that “the 30-day period 
for filing an appeal of the agency’s final order/Administrative Judge’s decision begins at the conclusion 
of the agency’s 40- or 60-day review period.” EEOC, Management Directive 110, Chapter 9, § 
II.A.1.(c)(3), https://www.eeoc.gov//federal/directives/md-110_chapter_9.cfm (last visited Mar. 24, 
2020). The AJ’s decision failed to include this notice. Accordingly, “the chief deficiency in the [AJ’s] 
notice . . . was that the notice did not clearly advise [Swauger] that a 30-day appeals period would 
commence at the end of the [DIA’s] 40-day review period if the [DIA] had not issued its final order 
by that time.” Staropoli, 786 F. Supp. 2d at 390; accord Moncus, 2006 U.S. Dist. LEXIS 4648, at *29 n.13 
(“The administrative judge’s decision advised plaintiff of the 30-day period for appeal to the EEOC 
from receipt of the agency’s final order. It further advised plaintiff that he could appeal directly from 
the decision only if the agency failed to issue a final order within 40 days of its receipt of the decision, 
but it did not clearly advise plaintiff that the 30-day appeal period commenced 40 days from the 
agency’s receipt of the decision.”). 

Furthermore, although the AJ’s decision directed Swauger to Chapter 10 of Management Directive 
110 “[f]or further guidance regarding appeals,” (doc. 7-1 at 44), Chapter 10 does not explain that when 
the AJ’s decision becomes appealable because the agency fails to issue a final order within forty days 
of the AJ’s decision, any appeal to the OFO becomes due within thirty days thereafter. See generally 
EEOC, Management Directive 110, Chapter 10, https://www.eeoc.gov/federal/directives/md-
110_chapter_10.cfm#_Toc425745423 (last visited Mar. 24, 2020); c.f. Jones v. Spencer, 4:17-CV-00145-
FL, 2018 U.S. Dist. LEXIS 138708, at *12–13 (E.D.N.C. Aug. 16, 2018) (although the AJ’s decision 
did not explicitly describe the appeal procedures and deadlines, it referred the plaintiff to a previous 
version of the Management Directive which provided that “[i]f an agency fails to take any action 
during the 40-day period, the [ALJ's] decision would be deemed ratified and the complainant would 
be entitled to file an appeal of the [ALJ's] decision as ratified after the expiration of the 40-day 
period.’”) (alterations in original) (citation omitted). Accordingly, because the AJ’s decision failed to 
adequately notify Swauger of his appeal rights vis-à-vis the expiration of the applicable 40-day period, 
Ashley cannot fault Swauger for failing to timely appeal the AJ’s decision to the OFO upon expiration 
of that period. 
 17 
which is properly addressed, stamped, and placed in the mail -- receives such item within 
three days of mailing. See Rosenthal, 111 U.S. at 193; In Re E. Coast Brokers & Packers, 

Inc., 961 F.2d at 1545. 
In the instant case, the evidence regarding the DIA mailing the final order to 
Morel consists of (1) the certificate of service the DIA appended to its final order; (2) 
the OFO’s dismissal order discussing the attempted delivery of the final order; and (3) 

a USPS tracking history documenting its delivery attempt upon Morel. The DIA’s 
certificate of service avers it transmitted the final order via “Certified Mail – Affirmative 
Receipt Requested” on January 27, 2017, to Morel’s address in Birmingham, Alabama. 
(Doc. 7-1 at 8). Morel does not refute the accuracy of his address as printed on the 

certificate of service. According to its tracking history, the USPS “attempted to deliver 
[the final order] at 2:40 pm on February 6, 2017 . . . and notice was left.” (Doc. 18 at 
9). Further, on September 27, 2017, the USPS marked the final order as 
“Unclaimed/Being Returned to Sender” and mailed it back to the DIA. (Id. at 11–12, 

Doc. 20-4 at 4). Morel fails to offer any evidence rebutting the presumption he received 
the final order.8 

8 On April 13, 2020, the court ordered the parties to file by April 23, 2020, additional briefing vis-à-
vis the afore-discussed presumption of receipt. (Doc. 19). However, this District’s General Order In 
Re: COURT OPERATIONS DURING THE PUBLIC HEALTH EMERGENCY CAUSED BY 
THE COVID-19 VIRUS extended the April 23, 2020, deadline to May 1, 2020. Ashley responded to 
the court’s order on April 23, 2020. (Docs. 20 & 21). To date, Swauger has not responded to the 
court’s order. 

 18 
Based upon the unrepudiated evidence that the DIA mailed its final order to 
Morel’s proper address via certified mail on January 27, 2017, and the USPS attempted 

to deliver it to Morel on February 6, 2017, the court presumes Morel received the order 
on February 9, 2017. See Zillyette, 179 F.3d at 1342 (“[A] three-day period . . . provides 
an appropriate period for a plaintiff to act to receive an unsuccessfully delivered letter 
[of which he or she received notice of the attempted delivery].”); Rives v. Lahood, No. 

1:11-CV-1940-RLV-JFK, 2012 U.S. Dist. LEXIS 195040, at *9 (N.D. Ga. June 8, 2012) 
(“There is a presumption that a final agency decision is received by a complainant three 
days from when it was mailed.”). 
To be sure, according to its Domestic Mail Manual, the USPS deems mail 

“unclaimed” when the “[a]ddressee abandoned or failed to call for mail.” Mailing 
Standards of the United States Postal Service, Domestic Mail Manual, Exhibit 1.4.1, 
https://pe.usps.com/text/dmm300/507.htm (last visited March 16, 2020). Thus, the 
USPS designating the DIA’s order addressed to Morel as “Unclaimed/Returned to 

The court notes that according to its tracking history, the USPS attempted delivery upon Morel in 
“BIRMINGHAM, AL 35209” and marked the final order as “Unclaimed/Being Returned to Sender” 
from “BIRMINGHAM, AL 35209.” (Doc. 18 at 9, 12). However, the certificate of service the DIA 
appended to its final order printed Morel’s zip code as 35216. (Doc. 7-1 at 8). Nevertheless, Swauger’s 
administrative filings portray Morel’s zip code as both 35216 and 35209. For example, Morel printed 
his zip code as 35209 in Swauger’s “RESPONSE IN OPPOSITION TO THE AGENCY’S 
MOTION FOR SUYMMARY [sic] JUDGMENT.” (Doc. 20-2 at 25). In addition, Morel printed 
his zip code as 35209 in Swauger’s “STATEMENT IN SUPPORT OF APPEAL”, (doc. 20-3 at 26), 
though the cover letter appended thereto prints his zip code as 35216. (Doc 20-3 at 1). The court 
discerns that zip code 35209 locates adjacently to zip code 35216. The court thus presumes the zip 
code discrepancy reflects an anomaly in USPS mail delivery service to zip code 35216, particularly as 
Morel printed his zip code as both 35216 and 35209 in Swauger’s administrative filings. 
 19 
Sender” engenders a reasonable inference that it perfected delivery of the order upon 
Morel, yet Morel failed to retrieve it. See id; Nibagwire v. Gonzales, 450 F.3d 153, 156 (4th 

Cir. 2006) (“When certified mail is used, the Postal Service’s delivery efforts are 
documented: there is a return receipt or written proof of attempted delivery and 
notification to the addressee of certified mail.”). 
Accordingly, based upon the objective evidence that the USPS attempted to 

deliver the DIA’s final order to Morel, Swauger’s contention that Morel “was never 
served with the [DIA’s] final order” fails to overcome the presumption that Morel 
received the order within three days of its February 6, 2017, delivery. See Barnett, 293 
F.3d at 1241 (“[A] party’s failure to uncover an item, which it was presumed to have 

received, does not mean that it never received the item and does not rebut the 
presumption of delivery.”); Belue v. Oliver, No. 3:12-cv-3461-AKK, 2013 U.S. Dist. 
LEXIS 27441, at *6–7 (N.D. Ala. Feb. 28, 2013) (the plaintiff failed to rebut the three-
day presumption of receipt of an EEOC letter by merely contending she received it 

twenty-two days after its mailing and providing no evidence that the EEOC delayed 
mailing the letter). Furthermore, Swauger does not cite to any statute, regulation, or 
judicial doctrine that would admit his October 4, 2017, appeal to the OFO as timely.9 

9 Initially, the court cannot heed the parties’ arguments as to equitable tolling because “[t]olling is not 
available” against a jurisdictional bar. United States v. Kwai Fun Wong, 575 U.S. 402, 409 n.3 (2015); see 
also id. at 408-09 (“When [Congress makes a time bar jurisdictional], a litigant’s failure to comply with 
the bar deprives a court of all authority to hear a case. Hence, a court must enforce the limitation even 
if . . . equitable considerations would support extending the prescribed time period.”) (citations 
 20 
 CONCLUSION AND ORDER 
Based upon the foregoing analysis, the court GRANTS Ashley’s Motion to 

dismiss and DISMISSES WITH PREJUDICE10 Swauger’s complaint. 

omitted). 

Nevertheless, in the event the afore-described Bryant/Turner/Tillery rubric applies to the exhaustion 
issue rather than Crawford, the court considers whether Swauger’s failure to exhaust his administrative 
remedies finds dispensation in the principles of equitable tolling. See § 1614.604(c) (“The time limits 
in [EEOC regulations] are subject to waiver, estoppel and equitable tolling.”); Forehand v. Fla. State 
Hosp., 89 F.3d 1562, 1570 n.17 (11th Cir. 1996) (“[P]rocedural defects in Title VII suits are subject to 
equitable modification.”) (citing Zipes, 455 U.S. at 392)). “The Supreme Court has made clear that 
tolling is an extraordinary remedy which should be extended only sparingly.” Justice v. United States, 6. 
F.3d 1474, 1479 (11th Cir. 1993). Equitable tolling generally excuses a plaintiff’s failure to exhaust 
administrative remedies in “situations in which an action was pending before state court, situations in 
which the defendant . . . concealed facts supporting a cause of action under Title VII, and situations 
in which the plaintiff was misled by the defendant about the nature of his rights under Title VII.” 
Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986) (citing Chappell v. Emco Mach. Works Co., 601 
F.2d 1295 (5th Cir. 1979)). Equitable tolling does not ease the exhaustion requirement “when the 
claimant fails to exercise due diligence.” Howell v. Dep’t of the Army, 975 F. Supp. 1293, 1301 (M.D. Al. 
1997); see Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96 (1990) (“[T]he principles of equitable 
tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.”). 

The court does not discern any basis for extending equitable tolling to Swauger’s untimely appeal to 
the OFO. As elaborated above, the circumstances of the instant case portray that Swauger’s untimely 
appeal arose not from “an inequitable event”, but rather from a want of diligence. Murphree v. Comm’r, 
644 F. App’x 962, 967 (11th Cir. 2016) (“The plaintiff bears the burden of showing that equitable 
tolling is warranted. . . . In general, the plaintiff must show that, despite exercising due diligence, an 
inequitable event prevented him from complying with the time limit.”). Accordingly, the court would 
decline to equitably excuse Swauger’s failure to exhaust his administrative remedies. 

10 See Davis v. O’Rourke, No. 1:18-CV-00937-MHC-WEJ, 2018 U.S. Dist. LEXIS 229089, at *16 n.6 
(N.D. Ga. July 18, 2018) (“Given [the plaintiff’s] failure to exhaust administrative remedies . . . , any 
opportunity for him to amend the Complaint would be futile. Thus, dismissal here should be WITH 
PREJUDICE.”); Hardy v. Potter, No. CV408-223, 2010 U.S. Dist. LEXIS 81007 at *1–10 (S.D. Ga. 
July 15, 2010) (the court recommended the dismissal with prejudice the plaintiff’s claims for failing to 
exhaust his administrative remedies pursuant to the Rehabilitation Act), report and recommendation 
adopted, No. CV408-233, 2010 U.S. Dist. LEXIS 81039 (S.D. Ga., Aug. 9, 2010); accord Pizzini v. 
Napolitano, No. 10-61498-CIV-LENARD/Turnoff, 2011 U.S. Dist. LEXIS 68424, at *19 (S.D. Fla. 
June 17, 2011), report and recommendation adopted, No. 10-61498-CIV-LENARD/Turnoff, 2011 U.S. 
Dist. LEXIS 68464 (S.D. Fla. June 27, 2011). 
 21 
DONE this 7" day of May, 2020. 

 LY peace IR. 
 UNITED STATES MAGISTRATE JUDGE 

 22